```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS


WOODROW W. McCOY,

                              Plaintiff,

          v.                            CASE NO.  05-3448-SAC

SHERIFF FRANK DENNING,
et al.,

                              Defendants.
```

### MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. 1983, was filed by an inmate at the Johnson County Detention Center (JCDC), Olathe, Kansas. Plaintiff paid a partial filing fee and was granted leave to proceed in forma pauperis.

Plaintiff has also filed a Motion to Supplement (Doc. 5) in response to the court's prior order requiring him to supplement the record with an explanation of the restrictions in the administrative segregation (ad seg) area. Plaintiff's Motion to Supplement (Doc. 5) is granted. Having considered all the materials filed, the court finds as follows.

### FACTUAL BACKGROUND

On or about Sunday, July 31, 2005, plaintiff was charged with four disciplinary infractions at the JCDC including disruptive conduct, battery of a deputy, interference with facility operations, and refusal to obey an order. He was placed in segregation and received written notification of the charges against him on that same day. Within a few days, on Thursday,

August 4, 2005, a disciplinary hearing was conducted, and plaintiff entered a plea of no contest to each charge. Plaintiff does not challenge the validity of the charges or the decision at the disciplinary hearing.

Plaintiff's only claim is that his placement in disciplinary segregation prior to his disciplinary hearing violated his federal constitutional rights. He names as defendants Frank Denning, acting Sheriff of Johnson County; Sergeant Prothe, Johnson County Deputy Sheriff; and Major Cortright, Johnson County Deputy Sheriff. He asserts his due process rights were maliciously and deliberately violated by the loss of his liberty, property, and privileges while in segregation without a hearing "from 7/31/05 to 8/04/05." He specifically requests punitive damages and "costs" as relief.

Plaintiff exhibits a copy of a report of the disciplinary incident, which indicates he was ordered by an officer at JCDC to lock down and then to lie down on the floor and was sprayed with "OC" spray due to his refusal to obey these orders. The report indicates he struggled, had to be controlled by a team of officers including defendant Prothe, and was handcuffed and escorted to "2D module" after the incident. Plaintiff exhibits copies of the four incident reports filed against him at the JCDC. The sanction listed on each is "refer to disciplinary board." Plaintiff also exhibits the Disciplinary Hearing Report, which sets forth the information presented at the hearing. He was found guilty and sanctioned with 10 days disciplinary segregation on each of three charges and 15 days disciplinary

segregation on the battery charge. The segregation was consecutive, and designated to have started on July 31, 2005.

**SCREENING**

Because Mr. McCoy is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. 1915A(a) and (b). Having screened all materials filed, the court finds the complaint should be dismissed for failure to state a claim.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

42 U.S.C. 1997e(a) directs: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." A complaint that fails to adequately plead exhaustion amounts to one that fails to state a claim upon which relief can be granted. Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004).

Plaintiff states he exhausted the available administrative remedies. This general statement is not sufficient; however, plaintiff exhibits copies of two "Inmate Communication Forms" he submitted at JCDC regarding this incident. The earliest is marked as grievance/appeal and dated September 19, 2005. Therein, plaintiff complained that "standard procedure" was being

3

violated, which he alleged was for inmates to be held in administrative segregation (ad seg) until the disciplinary hearing. He asserted his placement in disciplinary segregation before his hearing was a violation of JCDC policy. He requested disciplinary action against "staff responsible for my placement." The staff response dated September 22, 2005, provided, "because of your original violation, Battery on a Law Enforcement Officer, you were placed directly into Disciplinary Segregation" as a matter of "safety and security of the facility, staff and other inmates."

Plaintiff also exhibits an inmate communication form marked "appeal" and dated September 27, 2005. Therein, he complained of the denial of his request for disciplinary action against staff and alleged his due process and other rights were violated because he was denied access to his property and privileges. The officer's response was that Mr. McCoy had been placed in segregation "pending investigation into disciplinary violations which involved physical violence toward another" and that he did receive due process. Even though plaintiff does not exhibit the full number of grievances allowed at the JCDC according to the copy of rules he provides, the court finds he has made a sufficient initial showing of exhaustion of administrative remedies. In any event, the court concludes that even if all plaintiff's factual allegations are taken as true, no constitutional violation is stated. Thus, it would not be in the interest of justice to dismiss this complaint without prejudice.

4

**DISCUSSION**

    **DISCIPLINARY SEGREGATION**

Segregation of an inmate may be administrative as well as punitive. Where the segregated confinement is the result of disciplinary action, it is considered punitive; and some courts have held that inmates are entitled to the minimum procedural due process outlined in Wolff v. McDonnell, 418 U.S. 539 (1974). Plaintiff alleges he was placed in disciplinary segregation, and a couple of his exhibits support that allegation. Other of his allegations and exhibits suggest his initial segregation might also be characterized as administrative. Even accepting plaintiff's characterization of the initial segregation as disciplinary, the court finds plaintiff has failed to state a claim of denial of due process[1].

Under Wolff, procedural due process requires advance written notice of the claimed violations, an opportunity to present evidence, and a written statement of reasons for the factfinder's decision. Wolff, 418 U.S. at 563-66. Plaintiff's allegations indicate he was provided with notice of the charges against him, as well as a disciplinary hearing and written reasons for the decision. There would be no question of legality, had defendants conducted the hearing prior to plaintiff's placement in disciplinary segregation, or had his initial segregation been in

---

[1] The Tenth Circuit has also reasoned that "the imposition of disciplinary segregation that does not itself inevitably affect the duration of the prisoner's sentence does not implicate a liberty interest entitled to procedural due process protection." Gandy v. Ortiz, 122 Fed.Appx. 421, 422 (10th Cir. Feb.10, 2005, unpublished) *citing* Sandin, 515 U.S. at 485-87. A copy of this opinion is attached hereto in accordance with Circuit Court rules.

5

the ad seg unit. Plaintiff's own allegations and exhibits demonstrate he was initially placed in segregation for a violent, serious offense, which he does not dispute. Such circumstances are among the ones for which placement in segregation without a prior hearing may be reasonable. Under these circumstances, prison officials may satisfy due process by providing a hearing within a reasonable time after placement in segregation.

Plaintiff alleges no facts to suggest that the delay of 4 days or less before his disciplinary hearing was unreasonable. Nor does he allege or suggest that the hearing, findings or sanctions were affected in any manner adverse to him as a result of the few days delay. He received credit for every day he served in disciplinary segregation against the time imposed at the disciplinary hearing. The fact that his hearing was not held for three to four days, under the circumstances alleged, simply does not amount to deprivation of a liberty interest or a violation of constitutional due process.

**ADMINISTRATIVE SEGREGATION**

As previously noted, plaintiff's initial placement in segregation might also be viewed and analyzed as administrative. Segregation is allowable for administrative purposes including to prevent further disruption or a threat to security and control. Moreover, inmates may be confined in ad seg pending results of an investigation on disciplinary charges. Plaintiff was given notice of the charges against him at the time of his placement.

A decision by a prison official to place an inmate in

6

administrative or disciplinary segregation does not implicate the Due Process Clause of the Fourteenth Amendment unless the confinement presents "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. 472, 484 (1995); Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999), cert. denied, 531 U.S. 1981 (2001), *quoting* Sandin, 515 U.S. at 486. Prior to Sandin, the analysis of whether a prisoner was deprived of a liberty interest focused not on the nature of the deprivation experienced by the prisoner, but on the language of the applicable prison regulations and whether such language was 'mandatory.' Sandin, 515 U.S. at 479-81; Hewitt v. Helms, 459 U.S. 460, 468 (1983), *overruled, in part, on other ground by* Sandin.

Plaintiff asserts that the rules at JCDC contain mandatory language that created a liberty interest. However, the general language he cites can hardly be said to support his assertions[2]. There is no showing that these rules so limited the discretion of jail officials as to create a liberty interest.

The Supreme Court mandate since Sandin is that courts are to focus on the nature of the deprivation experienced by the prisoner rather than parsing the language of jail regulations. See Hill v. Fleming, ___F.3d___, 2006 WL 956201 (Apr. 4, 2006,

---

[2] Plaintiff exhibits a copy of a rule from the JCDC for disciplinary resolutions at the facility. Doc. 1, Exh. D. He cites language therein: "Disciplinary sanctions will not be arbitrarily administered and are to comply with sanctions applicable to the violation." He asserts this amounts to mandatory language which creates a liberty interest. Plaintiff does not cite a rule at the JCDC which requires a hearing prior to an inmate's placement in disciplinary segregation in every instance, even in the wake of a serious offense posing an obvious threat to safety and security within the jail.

unpublished[3]).  In Hill, the Tenth Circuit recently explained that courts are to examine the nature of the deprivation by considering the conditions of confinement, including both the duration and degree of restrictions of that confinement as compared with conditions for other inmates.  Id., *citing* Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 809 (10th Cir. 1999).  They observed that regardless of which baseline they had applied in making those comparisons, "either segregated or general prison populations--this circuit has never held the conditions, duration or restrictions of the detentions presented on appeal created a liberty interest, even in circumstances where the detention exceeded the 399-day duration of Mr. Hill's detention or restricted some of the same privileges."  See Hill, 2006 WL 856201, *and cases cited therein at *4 - *5*.  The Tenth Circuit noted that "[o]ther circuits have also largely held no liberty interest arose in administrative detentions presented on appeal--even in situations where the conditions were worse or the duration longer than in Mr. Hill's case."  See id.; cf., Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (Noting that following Sandin, "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest").  Thus, it is clear that most circuits have generally rejected inmate contentions of liberty interest violations arising from segregation and under conditions far more severe than alleged by plaintiff herein.

While plaintiff implies that his confinement in segregation

---

[3] A copy of this unpublished opinion is attached hereto in accordance with Circuit Court rules.

amounted to "significant deprivation," he utterly fails to describe any restriction or cluster of restrictions actually endured by him between July 31, 2005, and August 4, 2005, and compare those with conditions elsewhere at the jail. Instead, he exhibits a copy of "2 C/D Disciplinary Segregation Rules," (Doc. 1, Exh. B) suggesting conditions in 2D include loss of commissary privileges with exceptions, loss of personal property with exceptions, exercise periods limited to one hour daily, and other minor restrictions. In response to this court's order to explain restrictions in ad seg, he exhibits a copy of "Module Rules", (Doc. 5, Exh. I), to be followed in ad seg at JCDC. These rules do not set forth unrestricted commissary, personal property, exercise or visitation privileges. The privileges and restrictions which can be gleaned from this source do not appear to be significantly different from those listed in plaintiff's exhibit for disciplinary segregation[4].

Plaintiff also supplemented his complaint with an exhibit of a grievance[5] indicating that in February, 2006, he was in

---

[4] Plaintiff summarizes this exhibit as indicating conditions in ad seg included 2 visiting days, 2 hours of recreation, commissary and television privileges.

[5] In this grievance dated February 28, 2006, he complained about his placement in disciplinary segregation pending a disciplinary hearing. He stated he was already in ad seg and was told he would remain on ad seg status, but was being allowed only one visiting day, one hour of recreation, restricted commissary, no t.v., no radio," and "other privileges" were being restricted. He requested that his rights be restored. The response on February 28, 2006, granted relief by providing he would be afforded two hours of exercise while he was on ad seg status, would have his commissary returned, and be given a second visitation while he was pre-disciplinary. This exhibit does not relate to his segregation from July 31, 2005, to August 4, 2005. It does suggest that plaintiff's objections to segregated status prior to a hearing may be promptly heard and remedied at the JCDC.

Plaintiff also exhibits in his supplement a "request" filed by him on March 12, 2006, wherein he stated he was to be "released from 2D or disciplinary segregation" and asked instead to be allowed to remain in 2D until he was no longer at the jail. This request was denied, and he was sent to ad seg in 2B. Obviously, this grievance did not involve the incident on which this lawsuit is based. It is an interesting exhibit, however, in that plaintiff recently requested to remain in disciplinary segregation, while he sues herein claiming

segregation again for disciplinary reasons and was being allowed only "one visiting day, one hour of recreation, restricted commissary, no t.v., no radio, and other privileges that are restricted." The court finds plaintiff does not plead that conditions he actually experienced in disciplinary segregation on the dates sued upon herein were significantly more restrictive or "atypical" as compared to those he would have experienced had he remained in ad seg. Plaintiff's allegations, taken as true, show only that his placement in segregation could have entailed somewhat more restricted, but not completely prohibited visitation, exercise, and store privileges. Thus, his own allegations and exhibits indicate he received substantially "the same privileges" as the inmates in ad seg, if somewhat more limited. See, e.g., Penrod v. Zavaras, 94 F.3d 1399, 1407 (10th Cir. 1996). Moreover, the exhibited conditions are clearly "within the range of confinement to be normally expected" by one serving a jail term. Plaintiff certainly does not show that the restrictions he actually encountered for four days or less worked a "major disruption in his environment" or were "dramatically different." In sum, the court concludes there are insufficient factual allegations in the complaint to suggest that the deprivations alleged in this case rose to the level of atypical or significant hardship, such that they involve a protected liberty interest rather than a normally expected incident of confinement.

Even if plaintiff could produce evidence of "atypical"

---

compensable injuries for having been held there previously for four days.

10

conditions so that due process was implicated, he has not alleged facts sufficient to indicate his rights were violated.  An inmate placed in administrative segregation must have received notice of the reasons for his placement, as did plaintiff.  And jail officials need only have conducted an informal, nonadversary review of the information supporting the inmate's confinement, including whatever statement plaintiff wished to submit.  See Wilkinson, 545 U.S. 209, 125 S.Ct. at 2397 (2005); Hewitt, 459 U.S. at 472, 476.  Moreover, the informal review need not occur before placement in segregation, but within a reasonable time thereafter.  Hewitt. 459 U.S. at 472, 476.  Again, the court finds plaintiff has made no showing that the three to four day delay in his hearing was unreasonable or injurious.

**PERSONAL PARTICIPATION OF DEFENDANTS**

Finally, the court notes that the doctrine of respondeat superior cannot support liability under the civil rights act. See Kite v. Kelley, 546 F.2d 334, 337 (10th Cir. 1976); see also, Kaiser v. Lief, 874 F.2d 732, 736 (10th Cir. 1989)(holding doctrine of respondeat superior does not apply to "an officer who has no affirmative link with the constitutional violation").  To hold defendants Denning and Cortright liable, the plaintiff must allege facts showing an affirmative link between the alleged constitutional deprivation, his placement in segregation before his hearing, and each of those defendant's personal participation.  See Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003).  His allegation that they generally acted in a supervisory capacity at the jail is not enough.

11

For all the foregoing reasons, the court concludes this action must be dismissed for failure to state a claim of constitutional violation.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Supplement (Doc. 5) is granted.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief denied for failure to state a claim.

**IT IS SO ORDERED.**

Dated this 17th day of May, 2006, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge